

THE GEORGE
WASHINGTON
UNIVERSITY
WASHINGTON DC

VICE PRESIDENT AND GENERAL COUNSEL

November 27, 2006

Steven C. Tabackman, Esq.
Tighe, Patton, Armstrong, Teasdale, P.L.L.C.
1747 Pennsylvania Avenue, N.W., Suite 300
Washington, DC 20006

     Re:    Paul Bedewi

Dear Mr. Tabackman:

Almost three months after GW's outside counsel sent you our victim impact statement in Dr. Paul Bedewi's criminal case, and after I wrote to you separately attempting to reach a civil settlement of GW's ongoing claims against Dr. Bedewi, and after numerous calls and emails from me imploring a substantive response from you, I have finally received your letter of October 30th in response.

In your reply you reflexively take exception to the $18,738 that Dr. Bedewi continues to owe to GW. This amount should not come as any surprise to you or Dr. Bedewi, since GW has consistently told him and you that his self-chosen $80,000 repayment figure did not represent the full measure of his debts to GW. For example, in our August 19, 2004 letter to you in response to Dr. Bedewi's resignation, we stated that the $80,000 represented

> partial restitution for the amounts that Dr. Bedewi and his wife owe to the University in connection with his misuse of the University P-Card and his wife's inappropriate receipt of stipend funds, and it in no way represents any accord or satisfaction of his obligations to the University. . . .
>
> GW is not waiving any rights, privileges or remedies that it may have with respect to any of Dr. Bedewi's or his wife's conduct relating to GW. In particular, and without limitation, we have advised you that the University will be seeking full restitution and compensation from Dr. Bedewi and his wife in connection with their activities that have affected the University.

In addition, when representatives of Beers & Cutler met with Dr. Bedewi, they discussed in detail many of his P-Card expenses (and a complete listing of those expenses had always been available to him while he was employed at GW). He should be glad that of a much larger amount of his expenses that GW initially reviewed, GW is now only seeking to collect an additional $18,738 in direct payments and expenses, and we do not

*Attachment* CR 05-301-RWR

FILED
DEC - 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2100 PENNSYLVANIA AVENUE, NW • SUITE 250 • WASHINGTON, DC 20052 • 202-994-6503 • FAX 202-994-4640

Steven C. Tabackman, Esq.
November 27, 2006
Page 2

waive our rights to collect other and further amounts should we have to proceed to civil litigation.

Also, you seem to focus on and selectively to dispute a few P-Card expenses, but you should be aware that GW did not agree, and is under no obligation, to allocate his partial repayment to the other categories of his fraud. Thus, for present purposes, GW may consider that the P-Card expenses listed in our victim impact statement have been repaid in full, and that the additional $18,738 owing relates to the fraudulent golf membership payments and/or stipend payments to his wife. Such an allocation is particularly in GW's discretion since you claim that his partial repayment was unrelated to the later-filed criminal charges. GW certainly could not have known the details of what those charges would be, and is under no obligation to correlate his earlier payment to the elements of those later charges. We repeat that the $80,000 partial repayment amount was a figure of his own choosing, and was conveyed to us at the time as merely "the best that he could do," not as full repayment of his debts to GW.

Furthermore, although GW did turn over certain information to the US Attorney's Office in connection with its investigation of the NCAC and Mr. Bedewi, GW was obviously not a party to the drafting of any criminal charges against your client or to any negotiations between you or your client and the government. In particular, GW was not provided with the supposed March 7, 2005 "list of allegedly fraudulent expenditures," and even if it had seen such a list it could have done no more than verify that those expenditures were indeed fraudulent, not to certify that there were not other charges that should also have been on any such list.

Your letter does point out that there was an inadvertent error in GW's victim impact statement. We understand that the $208,000 in consulting payments that Mr. Bedewi received from Motor Vehicle Fire Research Institute were paid directly from that entity to him, not as part of "another GW grant." GW did have another grant itself from that entity, for which your client was the principal investigator and supervisor at GW. Also, GW's counsel did state that in the victim impact statement that GW was not seeking restitution (i.e., repayment in connection with his criminal proceedings) of those funds, but we also said, and continue to believe, that his solicitation and receipt of such funds "are further evidence of the scope of his fraud," and I might add, of his greedy and self-dealing intents. It belies credulity that Mr. Bedewi could have been working as a full-time, loyal, committed professional for GW, soliciting grants from and performing services through GW for MVFRI, while at the same time soliciting separate (and much more lucrative) work and personal payments from the same entity on the outside. Despite the rhetorical indignation of your response, I note that you refuse to provide any documents whatsoever to justify this supposed relationship, such as a copy of his contract, his delivered work product, his detailed time records, or anything else. Thus, we continue to believe that GW was additionally victimized by this arrangement, and that Mr. Bedewi was improperly enriched by it.

Steven C. Tabackman, Esq.
November 27, 2006
Page 3

My original July 12th letter was marked as a confidential settlement offer only so that you could not later claim that our offer to compromise some of our claims was somehow an admission or waiver of any of our rights. We welcome further inquiry by the U.S. Attorney's Office or any other authority into any of your client's other behavior or any

other related matters, and a copy of this letter will be provided to the USAO, USPO and the sentencing Court. But, we reiterate that GW has not, and does not, waive any of its rights or claims against Mr. Bedewi, and that we do not agree with any of the other statements made in your rambling 9-page letter that are not expressly addressed in this letter.

Sincerely,

William F. Howard
Deputy General Counsel